MONCURE, J.
Several questions arise in this case. I will consider in the .first place the main one, which is:
Whether payment made by the maker to the payee or endorser of a negotiable note, after it has been protested for non-payment, taken up by the latter, and transferred by him to a creditor as collateral security of a larger debt, such payment being made without knowledge of the transfer, is a good defence to an action *brought on the note by the transferee and holder against the maker?
A negotiable note may be transferred at any time while it remains a good, subsisting, unpaid note, whether before or after it has arrived at maturity; Story on Prom. Jiotes, $ 178; and in the latter case, even though it be protested for non-payment and bear upon its face the marks of its dishonor. Payment of a dishonored note by an endorser does not extinguish its negotiability as to him and all parties liable thereon to him; though it discharges the liability of subsequent endorsers, whose liability will not be revived by his putting the note again in circulation. Beck v. Robley, reported in a note to 1 H. Bl. 89, is perfectly consistent with this. Blake v. Sewall, 3 Mass. R. 556; and Boylston v. Greene, 8 Id. 465, in which it was held that a note once paid by a party to it, ceases to be negotiable, w'ere founded on a misapprehension of what was decided in Beck v. Robley; and were overruled in Guild v. Eager, &c., 17 Id. 615, which conforms to Gomez Serra v. Berkeley, 1 Wils. R. 46, and Callow v. Lawrence, 3 Maule & Sel. 95; as indeed do all the cases on the subject which I have seen, except the two cited supra from 3 and 8 Mass. See 2 Rob. Pr. new ed. 235-6.
But though a negotiable note may be transferred as well after as before it becomes due, the rights of the endorsee are very different in the two cases. 2 Rob. Pr. new ed. 252. In the case of a transfer of a note before it becomes due to a bona fide holder for value, he takes it free of all equities between the antecedent parties of which he has no notice: and it has been held that even gross negligence would not alone deprive him of his right. He thus often acquires a better right than that of the endorser under whom he claims. In the case of a transfer of an over-due note, the holder takes it as a dishonored note, subject to all the defences and equities to which it was subject in the hands of his immediate endorser, whether he has any notice thereof or not: He receives nothing but the title and rights of such endorser. An exception exists in the case of an accommodation note, which is said, in g'eneral, to be governed by the same rules as negotiable paper for consideration. So that a bona fide endorsee of such a note, whether before or after maturity, and though knowing it to be an accommodation note, may enforce it against the prior parties. In that case an endorsee of an over-due note acquires, a right, though the endorser under whom he claims has none. Sturtevant v. Ford, 43 Eng. C. L. R. 61; Carruthers v. West, 63 Id. 113; Story on Prom. Notes, § 178; 1 Parsons on Contracts 213-217.
But what is the nature of the equities subject to which an endorsee of an over-due note takes it? Are they only such equities as attach to the note itself; as illegality or want or failure of consideration, or a release or payment, or a counter claim agreed to be set off (which is equivalent to a jja.yment)? Or do they embrace also claims arising out of collateral matters, such as a general set-off ? On this subject there is much contrariety of decision. In England it was decided in Bronaugh v. Moss, 10 Barn. & Cress. 558, 21 Eng. C. L. R. 128. that the endorsee of an over-due bill or note is liable to such equities only as attach on the bill or note itself; and not to claims arising out of collateral matters, such as it. general set-off is. This is a leading case, and has since been uniformly followed in that country. Stein, &c. v. Yglesias, &c., 1 Cromp. Mees. & Ros. 565; Whitehead v. Walker, 10 Mees. & Welsh. 696. In the latter case it was averred in the plea that the endorsee received the bill with notice of the set-off; and yet it was held to be no de-fence. Parke, B., said, “If the note be-released or discharged, the plaintiff, under such circumstances, cannot make a *title to it. But a set-off is not an equity; it is a mere collateral matter; it is a right to set off a cross demand against the plaintiff’s’ cause of action, which was introduced to prevent a multiplicity of actions.” Alderson, B., said, “If the doctrine advanced on the defendant’s part were correct, no one would be able to tell whether certain instruments were negotiable or not; for their negotiability would depend on the will of a third person. No one could tell whether the maker would set off his claim against the prior party or not: if he will not, the bill is negotiable, otherwise it is not. ” In a very recent case decided by the Court of exchequer, Oulds v. Harrison, 28 Eng. L. & Eng. L. & E. R. 524, it was held that the right of an endorsee of an over-due bill of exchange to sue the acceptor, is not defeated by the existence of a debt due from the drawer to the acceptor, and notice by the latter to the drawer before endorsement, of his election to setoff the amount against the bill; nor is the endorsee affected by the existence of a right of set-off as between the acceptor and the drawer, although the bill was endorsed without value and for the purpose of defeating the set-off. Parke, B., delivering the judgment of the court, said, “although the plaintiff gave no value, the bill is transferred to him by endorsement, and he has a right to sue upon it as much *386 as any endorsee who is the holder for value. There is, therefore, no defect in his title on that account. The only question then is, Does the supposed fraud vitiate the title, and in what way?” “We think it is no fraud. The holder is under no legal obligation to allow the debt to be set off against the claim on the bill, unless he has entered into a contract to that effect with the defendant. We think this contract would create an equity in favor of the defendant, or attach to an over-due bill.” “It is wholly contingent whether the defendant will have a debt due to him from the plaintiff when the bill is sued on ; and *if there be, whether the defendant will choose to plead a set-off.”
The doctrine of Bronaugh v. Moss has been recognized and followed, I^believe, in most of the states of the Union in which the question has come up for adjudication. See the cases cited in note (c), 1 Parsons on Contracts 215; and in 2 Rob. Pr. new ed. 253. In Massachusetts and South Carolina all set-offs between the original parties existing at the time of the transfer of the title, are allowed: So in Maine; and so also in North Carolina. Id. In New York the course of decision has fluctuated; and the point was considered doubtful in Miner v. Hoyt, 4 Hill’s R. 193, 197. In this state there has been no decision on the subject.
But whatever conflict of authority there may be upon the question, whether the equities, subject to which an endorsee takes an over-due negotiable note, embrace set-offs in favor of the maker against the payee, existing at the time of the endorsement, I have been able to find no case in which it was held, or even said, that set-offs between those parties, arising or acquired after the endorsement, even though without notice thereof, are good against the endorsee. On the contrary, it was expressly decided in Baxter v. Little, &c., 6 Metc. R. 7, that they are not. Shaw, C. J., in his able opinion, said, “A note does not cease to be negotiable, because it is over due. The promisee by his endorsement may still give a good title to the endorsee. Notes or other matters of set-off acquired by the defendant against the promisee after such transfer, •cannot be given in evidence in defence to such note, although the maker had no notice of such transfer at the time of acquiring his demand against the promisee.” The endorsee of a note over due takes a legal title; but he takes it with notice on its face that it is discredited, and therefore subject to all payments, and offsets in the nature of payment. The ground is, that *by this fact he is put upon enquiry, and therefore he shall be bound by all existing facts, of which enquiry and true information would apprise him; but these could only apprise him of demands then acquired by the maker against the payee.” These views, I think, are sound; and conclusively show that if set-offs between the prior parties are admissible defences at all against the endorsee of an over-due negotiable note; only such are admissible as existed at the time of the endorsement.
Then, are payments made to the endorser after the endorsement of an over-due negotiable note, but without notice thereof, good defences to an action brought on the note by the endorsee? They seem to stand on the same footing with after-acquired set-offs, if set-offs between the original parties be admissible defences at all against the endorser; and Shaw, C. J., treats them as standing upon the same footing, in his opinion in the case last cited. Speaking of the maker of the note, he says “Having made his promise negotiable, he is liable to any bona fide holder and actual endorsee; and therefore even after the note has become due, in making payments to the original promisee, or in further dealings by which he gives him a credit, he has no right to presume, without proof, that the promisee is still the holder of the note. Besides, in case of payment of a negotiable note, or of a credit which the maker intends shall operate by way of payment, he has a right to have his note given up, if paid in full, or to see the payment endorsed if partial. Should he insist on this right, in the case proposed, he would at once perceive that the person to whom he is making payment or giving credit, is no longer the holder of the note.”
It was said by the counsel for the plaintiff in error, that no case can be found in which it has been decided that payment to the endorser of an over-due negotiable *note without notice of the endorsement, is not a good defence to an action brought by the endorsee against the maker. This I believe to be true: At least I have been able to find no such case; and the court has been referred to none by the counsel for the defendants in error. The case cited from 6 Mete. R. 7, was referred to by him. But what is said on the subject in that case by Shaw, C. J., though I think very sound, is 3ret obiter dictum, and not a judicial decision of the question. On the other hand, however, it may be answered, that no case can be found in which it has been decided, or even said, that payment to an endorser after the endorsement is a good defence against the endorsee. That no decision can be found the other way, may well be accounted for by the fact that payment of a negotiable note is very rarely made without taking in the note, or having the payment, if partial, endorsed thereon ; and no occasion has therefore occurred for a decision of the question. That no such occasion has occurred, is itself an argument in favor of the defendants in error.
But in the absence of express authority,
I think the question, upon principle, is quite a plain one. The law merchant, which is a part of our law, has made certain paper negotiable. The payee or person legally entitled to it may pass the legal title to another: and the title of that other is just as perfect as if he had been the original payee; or just as perfect as would be his title to any other kind of property legally *387 transferred to him. It follows, that after the transfer, payment can only be made to him; and if made to another, would be a payment in the payer’s own wrong- or at his own risk. To say that a payment made to the endorser without notice of the transfer is a good payment, is to beg the question. It is in effect to say that such notice is necessary to pass the legal title. If it were necessary to pass the legal title, then it would ^follow that payment to the endorser before notice of the endorsement, would be a good defence against the endorsee. But if it be not necessary to pass the legal title, then it follows, I think as clearly, that such a payment is not a good defence against the endorsee. Payment can only be made to the person who is invested with the legal title; and the common law rule of caveat emptor by analogy applies to the case. Por though a maker of a negotiable note in making a payment cannot be said to be a purchaser, j'et there is at least as much reason for holding him responsible for want of caution in making a payment, as for holding a purchaser responsible for want of caution in making a purchase. Indeed there is more. Por due caution will always protect the former against an improper payment; while the greatest caution may not protect the latter against an improper purchase. The former is always safe in making payment to the legal holder of the note, which he may thereupon require to be produced and surrendered to him; while the latter is often deceived by a false possession, and must at his peril look to the title, which may be separate from the possession. See Wheeler v. Guild, 20 Pick. R. 545, 553.
Pet us now enquire what is necessary to a transfer of the legal title to a negotiable note, and whether notice to the maker or any other party is required. On this subject the authorities speak plainly and uniformly. A negotiable note is made payable to the payee or order. If no such order be made, payment must of course be made to the payee. If such order be made, payment must be made accordingly, by the very terms of the note. It then stands as a note payable to the person to whom it is ordered to be paid by the payee. How is the order to be made? By the practice of merchants it is made by endorsement on the note; which may be either in full or in blank: and when made, the note must be delivered to the endorsee; x'such delivery being necessary to a valid endorsement. 1 Parsons on Contracts 205; Emmet v. Tottenham, 20 Eng. L. & E. 348; Sairsbury v. Parkinson, Id. 351. Endorsement and delivery with intent to pass the property, is a complete transfer of the legal title. Lloyd v. Howard, 69 Eng. C. L. R. 995. If the payee endorse the note in blank, that is, merely endorse his name upon it, the legal title may be transferred from one to another, ad infinitum, by mere delivery with intent to pass the title. Thus it is seen that notice of the endorsement to the maker, is not a necessary ingredient in a valid transfer of title to a negotiable note. The maker, in contemplation of law, is supposed already to have notice. When a negotiable note is endorsed by the payee, it assumes the nature of an accepted bill of exchange; the. endorser being the drawer, the maker the acceptor, and the endorsee the payee of the bill. The maker, having made the note payable to order, has accepted this bill in advance. And to require notice to the maker in order to a valid endorsement of a negotiable note, would be like requiring notice to the acceptor in order to a valid drawing of a bill of exchange. Reynolds v. Davies, 1 Bos. § Pul. 625.
There is a material distinction in regard to notice, between a negotiable note, and choses in action not negotiable. “In the latter case (saj’s Shaw, C. J., in the case before cited from 6 Metc. R. 7), notice of the assignment must be given by the as-signee to the debtor to prevent him from making payment to the assignor. Without such notice, he has no reason to presume that the original creditor is not still his creditor; and payment to him is according to his contract, and in the due and ordinary course of business. The assignee takes an equitable interest only, which must be enforced in the name of the assignor; and until notice, he has no equity against the debtor which can be ^recognized and protected by a court of law or equity.” A negotiable note, by its very nature and terms, is designed for circulation in the mercantile world. Its negotiation by mere endorsement and delivery, or by delivery only, is in the usual course of business. Choses in action not negotiable, are not designed for circulation. They may be assigned in equity; but not so as to prejudice the debtor; who until he receives notice of the assignment, may safely make payments to the original creditor.
The Code, ch. 144, § 14, 583, declares that “the assignee of any bond, note or writing not negotiable, may mantain thereupon any. action in his own name, which the original obligee or payee might have brought; but shall allow all just discounts not only against himself, but against the assignor before the defendant had notice of the assignment.” This section is the same in effect with 1 Rev. Code, ch. 126, § 5, p. 484. It applies only to writings not negotiable; and its only effect is to authorize the as-signee of such writings to sue at law in his own name. The legal title still remains in the assignor, in whose name the suit at law may be brought. This section can, by no just rule of construction, be extended to negotiable notes, whether before or after maturity; for in either case they are negotiable. They are not only not embraced, but are expressly excluded by the words of the section. “It were better, perhaps (as was said by Parker, C. J., in Sargent v. Southgate, 5 Pick. R. 312, 319), that dishonored notes should not be negotiable, but assignable only.” It has been long settled, however, that they are nego *388 tiable; and it belongs to the legislature alone to make them assignable only, if it be better that they should be so. That has not yet been done.
There is no necessity for notice to the maker, of an endorsement of a negotiable note, in order to protect him against loss occasioned by making- payment to a ^'person not entitled to the note. If he sustain such loss, it can only be the result of his own gross laches. He may discharge himself by payment to any person, who is in possession of the note with an apparent lawful right of ownership, unless he has notice that such person is not actually entitled. Though if an endorsement be necessary to give that person a title, the maker, before he can safely pay it, is bound to ascertain if the endorsement is genuine; and, if the endorsement be to a particular person, that the person producing it is the identical person. Story on Prom. Notes, § 113. He is not bound to pay the note, unless it be produced and surrendered to him on payment. It is not sufficient to show that the note has been lost or even destroyed, or that it has become over due; for he has a right, to it as his voucher of payment and as his security against any future claim or demand thereof. Id. § 107. If it be lost or destroyed, whether at the time of the loss or destruction it was over due or not, he is not liable to be sued at law, but only in equity, which, in granting relief, can at the same time require ample indemnity'. Id. § 108. These doctrines seem to be well settled in England, and have not been questioned in this state. 2 Rob. Pr. new ed. 219-222.
Then the remaining enquiry upon this branch of the subject is, Whether the defendants in error, to whom the note was delivered by the payees as collateral security of a larger debt, are such bona fide holders as are entitled to enforce the note against the maker notwithstanding its payment by him to the payees after such delivery, though without actual knowledge thereof?
There is perhaps no question connected with the mercantile law which is of more importance, and upon which, at the same time, there is a more distressing conflict of authority than the question, whether a holder of a negotiable note received as collateral security *of a pre-existing debt, is such a bona fide holder as to be free of all equities existing against the note in the hands of the person from whom he received it. The affirmative of the proposition, it seems, is maintained by the decisions in England, of the Supreme court of the United States, in Massachusetts, and in some other states; also by Judge Story in his Treatise on Promissory Notes, l 195. While the negative is maintained in New York, Pennsylvania, and other states. See the cases, or most of them, collected in 2 Rob. Pr. new ed. 249-251. In this state, Prentice, &c. v. Zane, 2 Gratt. 262, is the only case which bears upon the subject, and seems to have been based upon the supposed correctness of the negative side of the proposition; though the case is. not referred to in the work last cited. The note in that case was made in Philadelphia; and the decision conformed to the well settled law of the place of the contract. Whether the case would have been decided in the same way if the note had been a Virginia contract, is uncertain. The question may therefore be considered as still unsettled in this state.
But I deem it unnecessary to express any opinion upon the vexed question in this case; in which it may be conceded, pro hac vice, that the negative side of the proposition is correct, and that a holder of a negotiable note as collateral security, holds it subject to the equities existing against it at the time it was received by him. The holders in this case stand in that plight, because the note was over due and dishonored when it came to their hands. That it came to their hands as collateral security of a debt, can place them on no lower ground: though it would have placed them on that ground (on the concession above made), if they had received it before its maturity'. The negative of the proposition is based upon this; not that the holder of a note as collateral security is not a holder for value, *in the common law meaning of the word, but that he did not take it “in the usual course of trade,” according to the language of the mercantile law; and the only consequence is, that he takes it as the person from whom he received held it. He takes the legal title, if that person held the legal title. It will be conceded on all hands, I presume, that a pre-existing debt is a valid consideration for the pledge of a negotiable note as of any other property. The endorsee of a note so received can maintain an action upon it, not only against the maker but the endorser. He could not maintain an actibn against the endorser, if he were not an endorsee for value. A mortgagee of property as collateral security of a pre-existing debt, is a purchaser for value, in the meaning of the registry laws. I am of opinion, therefore, that the defendants in error are bona fide holders for válue of the negotiable note in question, and that payment by the maker to the endorser after he had transferred the title to the holders, is not a good defence to the action of the latter against the maker.
Indeed, it might perhaps be maintained that valuable consideration is not necessary to protect a bona fide endorsee of a negotiable note against a subsequent payment by the maker to the endorser. Valuable consideration is not necessary to a valid transfer of a negotiable note; which may be the subject of a gift, either inter vivos, or mortis causa. In Milnes v. Dawson, 5 Welsb. Hurl. & Gord. 948, it was held that payment by' the acceptor to the drawer of a bill of exchange, after the latter had endorsed it without value to the endorsee, was not a good defence to an action by ,the en-dorsee against the acceptor of the bill. “It would be altogether inconsistent with the *389 negotiability of these instruments (said Parke, B.), to hold, that after the endorser has transferred the property in the instrument, he rna3', by receiving the amount of it, affect “'the right of his endorsee.” “A bill of exchange is a chattel, and the gift is complete by delivery coupled with the intention to give. ” It did not appear in that case that the endorsement took place after the bill had become due and payable; and Baron Parke said it was not to be so inferred, though the counsel for the defendant contended that it was. But I do not see that the question was at all material. The legal title to negotiable paper may be transferred without value, whether before or after maturity; and in either case, the endorsee takes it subject to all equities then existing, but not to matters of defence accruing afterwards between the prior parties. The endorsee may sue in his own name as in other cases; but he cannot sue the donor, though he be an endorser, there being no consideration to support the action, which is founded on privity of contract. As to the donor, the endorsement, if it be a contract, is an exec-utory contract, and requires a valuable consideration to support it. As to the prior parties, it is an executed contract, and valid without consideration. More properly speaking, it is no contract at all, but an executed gift. If the transfer be merely colorable, of course anj“ defence may be made to the suit which could be made to it, if it were in the name of the party really entitled. I deem it unnecessary, however, to decide in this case, whether the defence set up would have been a good one if the transfer of the note to the defendants in error had not been for valuable consideration; being- of opinion that it was.
It will be observed, that in the foregoing views I have not adverted to the fact that the defendants in error had an interest in the payment of the note to the Merchants Bank, in Baltimore, and therefore furnished the payees with the money for that purpose, by discounting another note for them, nor to the fact that a day or two after the note was taken up and transferred *by the pa3'ees to the defendants in error, to wit, on the 7th of August 1850, the latter wrote to the plaintiff in error informing him of the transfer, and requesting payment to be made to them or their order; which letter, however, in consequence of his absence from home, was not received before the latter part of that month. I have not adverted to these facts, because I considered that without them the case is in favor of the defendants in error, and I did not wish to encumber it uimeces-saril3r. I have viewed it in the aspect most favorable to the plaintiff in error.
Before I leave this branch of the subject, it is proper to advert to the manner in which the note in this case is made negotiable. Promissory notes, though payable to order, were not, it seems, negotiable at common law, but were made negotiable in England by statute 3 and 4 Ann, c. 9. That statute was never in force in Virginia. But statutes have from time to time been passed, some of which were in force when the note in this case was executed, placing notes negotiable at a bank, or office of discount and deposit of a bank, in the state, on the same footing as foreign bills of exchange; and now bj- the Code, c. 144, § 7, p. 581 (which, however, though enacted before, did not go into effect until after the execution of the said note), it is declared that every promissory note for money payable in this state at a particular bank, &c. shall be deemed negotiable. See 2 Rob. Pr. new ed. 172. The note in this case was made “negotiable and payable at the Exchange Bank at Richmond, Virginia,” and so was a negotiable note by the operation of a statute then in force. Sess. Acts 1836-7, p. 66, '$ 6. Being a negotiable note, if is subject to all the rules of the mercantile law in regard to negotiable paper.
Having disposed of the main question in the case, it is now necessary to notice the remaining questions, which I will do very briefly.
*The first of these is, Whether there is a fatal variance between the allegations and the proofs, in this, that the declaration avers that the note was endorsed to the defendants in error on the day of its execution, while the evidence shows that it was transferred to them after it was dishonored? I do not see how this question can be raised in this case. It might have been raised in the Circuit court by a motion to exclude the evidence. No such motion was made. The only question which can now be raised is as to the correctness of the instruction given by the Circuit court, that upon the facts which the evidence tended to prove, if believed by the jury, the receipt constituted no sufficient defence to the action. The truth of that proposition ,is unaffected by the question of variance. But if the question could now be raised, I am of opinion that there is no such variance. While a declaration must, in general, state a time when every material fact happened (at least thaf was the rule before the Code took effect), it is not generally necessar3r that the time should be stated trul3', unless it constitute a material part of the contract declared upon, or unless the date of a written instrument is professed to be described. 1 Chitt. PI. 257. The general if not the universal practice is to state endorsements of a negotiable note as having been made at the time of its execution. After setting out the execution of the note, the endorsements are concisely stated as follows: £ ‘And the said B then and there endorsed and delivered the said note to the said C; and the said C then and there endorsed and delivered the said note to D.” But it is argued, that where the note is transferred to the plaintiff a fter its maturity, that fact constitutes a material part of the contract under which he claims, and should therefore be stated in the declaration. It has never been decided that there is any difference in the *390 mode of stating- endorsements made before and after ^maturity; or that in the latter case the endorsements should be stated as haying been made after maturity. On the contrary, where an endorsement of a bill was stated in the declaration to have been made before the bill became due, but appeared in evidence to have been made afterwards, this was held not to be a material variance. Young v. Wright, 1 Camp. R. 139. In a suit against the maker of a negotiable note, the endorsements are merely stated, not as parts of the defendant’s contract, but to show the plaintiff’s title to sue upon that contract. The note being negotiable until paid, that title is complete, whether the endorsements be before or after maturity. If the endorsements be not made in the usual course of business — as for example if they be made after the note is dishonored — the defendant is thereby let in to certain defences which he would not otherwise be allowed to make. But all this is matter of defence, and must come from the defendant. The law presumes, in the absence of proof, that endorsements are made before maturity; because that is the usual course of business. But the presumption may be repelled by proof. The holder of a note which comes to him after it is dishonored, may, like any other holder, sue as endorsee of any person who may, have endorsed the note in blank, whether-'immediately or remotely; in the latter case, striking out the intermediate endorsements, whether special or in blank. If he sue as endorsee of one who endorsed it before maturity, the endorsement would be truly stated as made before maturitj'. And yet the defendant would be entitled to show in his defence that the note came to the plaintiff after it was due, and subject to certain equities which attached to it in the hands of the person from whom he received it.
The case of Bank U. States v. Jackson’s adm’x, 9 Heigh 221, was cited and much relied upon by the counsel for the plaintiffs in error to show that the variance *in question is fatal. But I do not think that it can have that effect. That was a suit by endorsees, not against the maker, but the endorser, not of a negotiable note, but a note not negotiable by the law of Virginia. The contract of the endorser was special and peculiar, and could only be declared on specially. There was a demurrer to the declaration and a special verdict. The court held the special counts to be bad on demurrer, or unsupported by the facts found by the verdict. The difference between that case and this is, I think, sufficiently obvious, without further remark.
The next question is, Whether the court instructed the jury as to the weight of the evidence? The plaintiffs, to sustain tlieir action, offered in evidence the note in the declaration mentioned, and there rested. This evidence, standing alone, would have been sufficient for the purpose. Thereupon the defendant offered in evidence a receipt of the payees, dated August 9, 1850, for the amount of the note. This receipt, standing alone,- was not a sufficient defence to the action. The legal presumption in that state of the case was, that the note had been endorsed to the plaintiffs for value before it was dishonored. To counteract this presumption and complete the defence, the deposition of Hawkins was introduced by the defendant, to prove that the note was transferred to the plaintiffs after it was dishonored, though before the date of the receipt, to wit, on or before the 7th of August 1850, and as collateral security of a debt, instead of for value received at the time of the transfer. The evidence tends to prove no other facts, favorable to the defendant, than these. The question then arose, whether the receipt, taken in connection with these facts, if the jury believed them to be proved, constituted a sufficient defence to the action; and the court instructed the jury that it did not. I see no error in this instruction. It expressly refers the weight of the evidence offered to *prove the facts to the determination of the jury. The Instruction was not as to the sufficiency of the evidence to prove the facts, but as to the sufficiency of the facts (if believed by the jury to be proved) to constitute a defence to the action. It was the province of the jury to decide as to the former; but of the court, if invoked for the purpose, to decide as to the latter. It would have been more regular perhaps if the court had instructed the jury that if they believed from the evidence that the note was transferred to the plaintiffs before the date of the receipt, though after the note was dishonored, and as collateral security of a pre-existing debt, then the receipt constituted no sufficient defence to the action. But as there is no conflict in the evidence and no uncertainty as to the facts which it tended to prove; and as upon those facts, viewing the evidence most favorably for the defendant, the receipt is no sufficient defence to the action, I think the instruction is substantially unobjectionable. It is certainly more so than was the instruction in Pleasants v. Pendleton, 6 Rand. 473; which, however, was sustained by this court.
The remaining question is, Whether “there is error in the verdict and judgment, because the costs of protest are found against the defendant, while there was no sufficient legal evidence of the fact of protest before the jury?” This question might have been raised in the Circuit court by a motion for an instruction framed for the purpose; or by a motion for a new trial. But it was not: and it cannot be now raised in this court. If it had been raised in the Circuit court by a motion for an instruction, the evidence of protest might have been thereupon supplied. Non constat that such was not the case. The evidence was not in when the exception was taken to the instruction given in regard to the receipt; but it might have been offered afterwards.
The receipt itself shows that the note *391 was * protested. If the question had been raised by a motion for a new-trial, the error in the verdict, if any, could and would have been cured by a relea.se. It is a general rule, that questions not raised in the court below, cannot for the first time be raised in this court. That rule emphatically applies to a question of this kind.
I think there is no error in the judgment, and that it ought to be affirmed.
D ANTEE and EEE, Js., concurred in the opinion of Moncure, J.
AEEEN, P., and SAMUELS, J., dissented.
Judgment affirmed.